**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Steven M. Jensen, Douglas R. Jensen, Earl R. Jensen, Lucille M. Solberg, Doreen Jensen, Personal Representative of the Estate of Leslie M. Jensen, deceased, and Charlene Bangen, | ) ) ) ) ) ) ) | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No.  4:10-cv-00027 |
| The Rudman Partnership and Hess Corporation, | ) ) ) | |
| Defendants. | ) ) | |

Before the court is the defendants' Motion for Summary Judgment filed on January 31, 2011. (Docket No. 8).  The Plaintiffs filed a response on February 23, 2011.  (Docket No. 12).  The Defendants filed a reply on March 8, 2011. (Docket No. 13).  For the reasons set forth below, the court grants the motion.

**I.      BACKGROUND**

Raymond and Marie Jensen executed an Oil and Gas Lease to M.B. Rudman, of Dallas, Texas, on August 5, 1949.  The lease covered the following property, approximately 880 acres in Mountrail County, North Dakota:

Township 158 North, Range 94 West
Section 8:      W½
Section 20:    NE¼, S½NW ¼
Section 21:    S½N½
Section 28:    W½NE¼, SE¼NE¼, SE¼NW¼

1

The Rudman Partnership ("Rudman") owns the lease as to the W½NE¼ and SE¼NE¼ of Section 28.  Hess Corporation ("Hess") owns the lease as to the SE¼NW¼ of Section 28.  Hess reassigned the lease as to the E½NE¼ of Section 20, and the S½N½ of Section 21 to St. Mary Land & Exploration Company, which is now known as SM Energy Company.  Oil and/or gas has been produced from certain portions of the lease.  The plaintiffs allege, however, that the following tracts of land have not been developed and are not producing any oil or gas:

> Township 158 North, Range 94 West
> Section 20:   E½NE¼
> Section 21:   S½N½
> Section 28:   W½NE¼, SE¼NE¼, SE¼NW¼

The habendum clause of the lease provides that the lease:

> shall remain in force for a period of ten (10) years from the date hereof, called 'primary' term, and thereafter so long as oil, gas or other mineral, or any one or more of them, is produced from said land hereunder, or Lessee is engaged in drilling, mining or reworking operations on said land hereunder.

(Docket No. 10-1). Plaintiffs served a Notice and Demand for Further Development upon both Rudman and Hess on November 24, 2009.  Defendants admit that there has not been actual production of oil and gas on all tracts of land covered by the lease.  (Docket No. 9).  As a consequence of the lack of actual production on these tracts, plaintiffs argue that defendants have breached the implied covenant to further develop, the implied covenant of reasonable exploration and the implied covenant not to hold leases for speculative purposes as they have failed to develop these tracts for over sixty-one (61) years.  Based upon the alleged breaches of these covenants, plaintiffs request termination of the lease as to the undeveloped tracts of land listed above.

Rudman executed a Geophysical Permit granting Petro-Hunt, LLC permission to conduct a 3D seismic shoot on certain portions of the non-producing land, specifically, the W½NE¼ and the

SE¼NE¼ of Section 28 on January 13, 2009.  The seismic shoot also covered the NE¼SW¼ and the SW¼SW¼ of Section 9, Township 158 North, Range 94 West and other lands in the immediate area of the leased premises.  In addition, Rudman is receiving drilling reports from wells that are located within sections 3 and 4, Township 158 North, Range 94 West, approximately 2½ to 3½ miles from the leased tracts at issue in this case. (Docket No. 10-2).  Hess states that it is "evaluating the activity" in the lands surrounding the leased premises, including wells in Sections 4, 10 and 15 in Township 158 North, Range 94 West, and that it has drilled a well within 1½ miles of the leased property that is only marginally performing, producing 9,000 barrels over a span of four (4) years.

Based upon these facts, defendants argue that they have undertaken sufficient development activity, including seismic activity, study of geologic data and study of production data from nearby wells, to continue to hold the lease in full force and effect.

## II.   __STANDARD OF REVIEW__

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c).  Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to the fact-finder or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The

moving party bears the burden of demonstrating an absence of a genuine issue of material fact.
Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The nonmoving party
"may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set
out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

      This action is based on diversity jurisdiction.  Therefore, the Court will apply the substantive
law of North Dakota.  See Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V., 384
F.3d 492, 495 (8th Cir. 2004).

**III.   LEGAL DISCUSSION**

      It is well settled that the lessee of an oil and gas lease has an implied obligation to the lessor
to do everything that a reasonably prudent operator would do in operating, developing, and
protecting the property, with due consideration being given to the interests of both the lessor and the
lessee, if there is no express clause in the lease relieving the lessee of this implied duty.  Olson v.
Schwartz, 345 N.W.2d 33, 38-39 (N.D. 1984) (citing Feland v. Placid Oil Co., 171 N.W.2d 829, 835
(N.D.1969)); see also 38 Am. Jur. 2d Gas and Oil § 127, p. 601.  This obligation is implied from the
relation of the parties and the object of the lease, and is not abrogated by the expiration of the
primary term of the lease.  Id.  Based upon this obligation, courts have read the existence of implied
covenants into contracts for mineral leases.  An implied covenant to explore and reasonably develop
the leased premises is a part of an oil and gas lease unless the lease provides otherwise.  See e.g.
Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 281(1934); see also 17 Williston on
Contracts, § 50:63 (4th Ed.) (citations omitted). The Eighth Circuit discussed these implied
covenants and their implications in Brewster v. Lanyon Zinc Co., 140 F. 801 (8th Cir. 1905), stating:

> The implication necessarily arising from these provisions-the
> intention which they obviously reflect-is that if, at the end of the

> [original] period prescribed for original exploration and development, oil and gas, one or both, had been found to exist in the demised premises in paying quantities, the work of exploration, development, and production should proceed with reasonable diligence for the common benefit of the parties, or the premises be surrendered to the lessor.

Id.

Whether or not one's conduct has met the standard of the prudent operator is a question of fact.  Johnson v. Hamill, 392 N.W.2d 55, 58-59 (N.D. 1986).  The prudent operator standard is not formulaic in its application.  Rather, "[e]ach case must be decided on the facts peculiar to it and the burden of proving a breach of the implied covenant is on the party asserting it."  Id.  The following non-exhaustive list of factors are to be considered in applying the prudent operator standard:

> (1) the quantity of oil and gas capable of being produced as indicated by prior exploration and development; (2) the local market and demand therefor; (3) the extent and results of the operations, if any, on adjacent lands; (4) the character of the natural reservoir-whether such as to permit the drainage of a large area by each well; (5) the usages of the business; (6) the cost of drilling, equipment, and operation of wells; (7) the cost of transportation, storage, and the prevailing price ... (8) general market conditions as influenced by supply and demand or by regulation of production through governmental agencies ... (9) evidence of the willingness of another operator to drill on the tract in question; (10) the attitude of the lessee toward further development; and (11) the elapsed time since drilling operations were last conducted.

Id. (internal citations omitted).

"A lessor may be entitled to relief upon a theory of breach of the implied covenant of reasonable development where a long period of time passes without drilling on substantial unexplored portions of a leasehold held by production on part of the leasehold without proving that a well on the undeveloped portion would be profitable."  Id. at 58 (citations omitted).  Furthermore, "The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production

5

pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land."  Olson, 345 N.W.2d at 39 (quoting Sauder, 292 U.S. at 281).  A lessee must "prosecute drilling operations with reasonable diligence . . . having regard to the interests of both lessor and lessee."  Johnson, 392 N.W.2d at 57.  However, "[d]evelopment and exploration are not carried out only by drilling operations.  They are also performed by such other activities as geophysical surveys and farm-out operations . . . efforts to gather geological information . . . and 'participation in the preliminary play to an eventual deep test in the area.'"  Id. (internal citations omitted).

Before a court of equity will grant a forfeiture of a lease, the lessor must first give notice of the breach and demand that the terms of the implied covenant be complied with within a reasonable time, and must give the lessee a reasonable time to so comply.  Id. at 40 (citing Hermon Hanson Oil Syndicate v. Bentz, 40 N.W.2d 304, 307-308; Superior Oil Co. v. Devon Corp., 604 F.2d 1063, 1069 (8th Cir. 1979)).

IV.   **ANALYSIS**

Plaintiffs assert in their complaint that they are entitled to a judgment forfeiting the specified tracts of the leased property because defendants have failed to adequately develop the specified tracts of the mineral lease they hold in the plaintiffs' property for more than sixty-one (61) years. (Docket No. 1-1, p. 3).  They argue that defendants' failure to develop the tracts over that period of time has resulted in a breach of the implied covenant to further develop, the implied covenant of reasonable exploration and the implied covenant not to hold leases for speculative purposes.  Id. North Dakota case law makes clear, as discussed *supra*, that in evaluating a breach of these implied covenants, the "prudent operator" standard applies.  Thus, if defendants have failed to act as a

6

prudent operator in operating, developing and protecting the property, they have breached the implied covenants and forfeited the lease.

Defendants argue in their motion for summary judgment that they have conducted various development activities sufficient to continue to hold the lease in full force and effect as a matter of North Dakota law.  The facts in this case are analogized by the defendants to two North Dakota cases, Johnson v. Hamill, 392 N.W.2d 55, 58-59 (N.D. 1986) and Slaaten v. Amerada Hess Corp., 459 N.W.2d 765 (N.D. 1990),  to support their argument that their development activities suffice as a matter of law in satisfying the prudent operator standard.

In Johnson, the North Dakota Supreme Court upheld the factual findings and ultimate determination by the trial court that a developer, under similar factual circumstances to the case at hand, had conducted itself as a prudent operator.[1]  392 N.W.2d at 59.  The court in Johnson noted that the case came down to a "battle of the experts," and that at trial, the court found "more persuasive, credible, and quite convincing the opinion testimony" of defendant's experts concerning defendant's development of the subject land.  Id.  The holding in Johnson upheld the trial court's factual determinations as not clearly erroneous, finding that based upon the testimony before the

---

[1] Specifically, the court in Johnson made the following factual findings:

(1) that the Johnson lease was held by production from two wells completed in the S 1/2 of Section 25 in October 1978 and July 1979; (2) that Terra participated in the drilling of those two wells through a farm-out agreement; (3) that Terra granted a seismic option on portions of the Johnson lease to Patrick Petroleum Company, which conducted seismic operations but did not exercise the option by farming-in any of the Johnson lease and Terra later negotiated a farm-out agreement with another company, which did not farm-in any of the land by drilling a well; (4) that "there is no closure nor structure in the N 1/2 of Section 25 productive of oil and/or gas from the Red River formation;" (5) that a prudent operator would not have drilled a development or exploratory well on the Johnson lease; (6) that Terra has conducted itself as a prudent operator; (7) that Terra has demonstrated interest in continuing to develop and explore the Johnson lease in other formations and is acting as a prudent operator with respect to such development and exploration; and (8) that Terra has not breached "any implied covenant to develop, explore or protect the Johnson lease."

392 N.W.2d at 59.

court and on facts particular to that case, that sufficient evidence existed to support the finding that defendant had "met the prudent operator standard in not drilling a well either to further develop . . . or to explore potentially productive . . . zones." Id. at 60.  While Johnson is somewhat helpful in establishing what kinds of development activities are relevant for consideration, the case is of limited value in that it was not resolved upon summary judgment.

In Slaaten, plaintiffs requested cancellation of their mineral lease with the Amerada Hess Corporation based upon an alleged breach of an implied covenant to protect against drainage, for which they sought damages, and also upon an alleged breach of the implied covenant of reasonable development and further exploration, for which they sought cancellation of the lease.  Id. at 766. The court granted plaintiffs' request for a jury trial on the drainage issue, but denied a jury trial as to the cancellation of the lease.  Id. at 767.  After the trial on the drainage claim, the jury returned a special verdict finding that Amerada Hess had acted as a prudent operator.  Id.  The plaintiffs apparently again requested a trial on the cancellation issue, or, in the alternative, that the court allow the parties to brief the law and argue the evidence produced at trial on the damages issue.  Amerada Hess subsequently filed a brief requesting summary judgment as to the cancellation issue based upon the evidence and testimony offered at trial.  Id.  The court inquired of the parties whether or not they would seek to submit additional evidence on the cancellation issue and received no response.  The court subsequently held that cancellation of the lease was inappropriate based upon the jury's determination, under the facts and circumstances of the case, that Amerada had conducted itself as a prudent operator, and based upon plaintiffs' failure to offer any additional evidence.  Id.

In affirming the trial court's summary judgment ruling upholding the lease, the North Dakota Supreme Court pointed to the plaintiffs' failure to sustain their burden to prove a breach of the

8

implied covenant of reasonable development. <u>Id.</u> at 769.  The court noted that Amerada presented evidence at trial, albeit in the context of the drainage issue, as to the history of the development of the leasehold, including wells that had been drilled on or in the vicinity of plaintiffs' land, poorly performing wells located near the leased property, expert testimony that there was no recoverable hydrocarbons under the leased property, and that Amerada was pursuing further exploration through a seismic program. <u>Id.</u>  The Supreme Court noted that in light of the evidence presented by the defendants at trial, and the plaintiffs' subsequent failure to submit additional evidence on the issue, that "the court was cognizant of the record on reasonable development and further exploration, and its finding that Amerada acted as a prudent operator [was] not clearly erroneous." <u>Id.</u>

The court finds the <u>Slaaten</u> case and its reasoning instructive in the case at hand.  As in <u>Slaaten</u>, the defendants in this case provided evidence to the court of the development activity that has occurred both prior to and since plaintiffs' service of notice and demand, discussed in further detail below.  While the question of whether or not a lessee's development activities satisfy the prudent operator standard is typically a question of fact, plaintiffs in this case, like the plaintiffs in <u>Slaaten</u>, have failed to provide sufficient evidence to counter the undisputed evidence proffered by the defendants to create a fact issue for trial.

In the pending motion for summary judgment, defendants have provided the following facts regarding the development activities they have undertaken on the leased property: (1) conducting and evaluating a seismic shoot on the W½NE¼ and the SE¼NE¼ of Section 28, a portion of the leasehold, and also upon the SW¼SW¼ of Section 9, Township 158 North, Range 94 West and other lands in the immediate area of the leased premises; (2) leasing minerals in Section 4, Township 158 North, Range 94 West to Petro-Hunt, reviewing daily drilling reports from the Hoiby #158-94-

9

4B-3-1H well and analyzing the data provided by Petro-Hunt from that well; (3) Hess's "evaluation" of surrounding lands and producing wells, including the Torgerson 15B-2-2H well in the NW¼NW¼ of Section 15, Township 158 North, Range 94 West, the Rice 10B-2-1H well in the NW¼NW¼ of Section 10, Township 158 North, Range 94 West, and the Hoiby #158-94-4B-3-1H well in Lot 4 of Section 4, Township 158 North, Range 94 West; and (4) Hess's drilling of a Bakken horizontal well approximately 1½ miles from the leased premises.   (Docket No. 9, p. 9). Furthermore, Hess submitted an affidavit from Stephen T. Willis, the Team Lead for the Bakken Land at Hess, stating that the Bakken horizontal well is only marginally producing (9,000 barrels in over four years) and only four horizontal Bakken drills that have been drilled in the eastern 2/3rds of Township 158 North, Range 94 West.

In response, plaintiffs do not contest that defendants have engaged in these development activities and acknowledge that the activities "are the sort of actions undertaken in developing oil and gas properties."  The only thing that plaintiffs proffer in response is that "[a] reasonable triar [sic] of fact could determine that the sixty year span between the execution of the lease and the development activities alleged by the Defendants amounts to a breach of the implied covenant of reasonable development."  (Docket No. 12, p. 1).  In support of their argument, plaintiffs point to the following language from Johnson v. Hamill, in support of their argument:

> We held in Olson v. Schwartz, supra, that a lessor may be entitled to relief upon theory of breach of the implied covenant of reasonable development where a long period of time passes without drilling on substantial unexplored portions of a leasehold held by production on part of the leasehold without proving that a well on the undeveloped portion would be profitable.

392 N.W.2d at 58.

However, Johnson also holds that, "[a] lessor alleging breach of implied covenants is not

entitled to forfeiture of a lease until he has notified the lessee of the breach, demanded that the terms of the implied covenant be complied with within a reasonable time and given the lessee a reasonable time for such compliance." Id.; see also Olson, 345 N.W.2d at 40.  The rationale for this well-settled rule was explained in Superior Oil Company v. Devron Corporation, supra, an Eighth Circuit decision cited by the North Dakota Supreme Court in Olson, as follows:

> A lessee, even though he may be in breach of the implied covenant, should be informed of that breach, and should be given an opportunity to redeem himself by commencing further development within a reasonable time.  The lessee is in effect given a choice of development or forfeiture.  Such a rule is consistent with due process and with the law's abhorrence of forfeitures.  It takes nothing away from the lessor because he retains his right to bring an action for forfeiture.  Further it promotes that degree of certainty in the field of oil and gas lease law which enables an attorney to give a title opinion on the validity of a recorded lease.

604 F.2d at 1069-1070.

Based on this case law, the sixty-years of non-development that plaintiffs rely upon, almost all of which precedes their demand for demand for development,  is alone not enough to create a fact issue.  That being said, the defendants should take heed of the following admonition that has been offered in the past to other defendants in similar situations:

> We merely hold that the failure of this lessee to drill during the period and under the circumstances shown here was not ground for cancellation of the lease at the time of the trial. And we may add ... that such delay as was here shown, may not continue until it becomes unreasonable or unconscionable and thus grow into valid ground for cancellation of the lease at some time in the future. As a corollary, it follows that our decision herein should not be interpreted as licensing the defendant to do nothing in the near future toward further development of the lease.

Johnson, 392 N.W.2d at 61 (citing Shell Oil Co. v. Howell, 208 Okla. 598 (1953)).

11

## V.     __CONCLUSION__

Based upon the foregoing, defendants' Motion for Summary Judgment (Docket No. 8) is

**GRANTED** and the Complaint in this matter is **DISMISSED WITH PREJUDICE AND**

**WITHOUT COSTS TO EITHER PARTY**.

**IT IS SO ORDERED.**

Dated this 10th day of May, 2011.

_/s/  Charles S. Miller, Jr._
Charles S. Miller, Jr.
United States Magistrate Judge